**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **GABRIEL MACK,** | * | |
| **Plaintiff,** | * | |
| v. | * | **Civ. No. DLB-23-1577** |
| **MARYLAND DEPARTMENT OF HUMAN SERVICES,** | * | |
| | * | |
| **Defendant.** | | |

**MEMORANDUM OPINION**

Gabriel Mack claims that his former employer, the Maryland Department of Human Services ("DHS"), discriminated against him on the basis of disability and violated his right to medical leave. ECF 2. Pending before the Court are DHS's motion to dismiss or, in the alternative, for summary judgment, ECF 11, and Mack's motion for discovery, ECF 17. The motions are fully briefed. ECEF 11-1, 16, 17, 18, 20. No hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the motion, treated as a motion to dismiss, is granted and the motion for discovery is denied as moot.

I.      **Background**

Gabriel Mack is a public services professional who lives in Washington, D.C. ECF 2, at 1 & ¶ 7. He is also a person with disabilities. *Id.* ¶ 6. DHS is a unit of the Maryland government that provides public services throughout the state. *Id.* ¶ 3. DHS hired Mack in 2011. *Id.* ¶ 7. Beginning in August 2019, he served as a Human Services Specialist at an annual salary of $55,799 under the management of Jo-Ellen Brooks.[1] *Id.* ¶¶ 7–8.

---

[1] Mack also refers to Brooks as "Jo-Ella Brooks." ECF 2, ¶ 10. It is unclear whether Brooks went by both names or if the discrepancy is a typo.

During his employment with DHS, Mack notified DHS of his disabilities.  *Id.* ¶ 6.  He also submitted multiple requests for accommodations for his disabilities.  *Id.*  DHS denied them.  *Id.*  At some point, he "complained about discrimination and harassment based on disability" and DHS's denial of his accommodation requests.  *Id.* ¶ 18.  Around October 1, 2020, Mack was approved for medical leave so that he could have time off from work as needed to treat his conditions.  *Id.* ¶ 9.

However, as soon as Mack requested to take that leave, Brooks became hostile.  *Id.*  On October 8, 2020, while Mack was out on leave, Brooks directed him to come to the office.  *Id.* ¶ 10.  When he arrived, she fired him.  *Id.*  A deputy escorted him out by force.  *Id.*

On December 28, 2020, Mack reached out to the Maryland Commission on Civil Rights ("MCCR") and informed them that he had experienced "discrimination and retaliation" at DHS from June 2020 to his firing on October 8.  *Id.* ¶ 4.  On September 2, 2021, he "submitted his Formal Complaint of Discrimination" to MCCR.  *Id.*  MCCR then cross-filed that charge with the United States Equal Employment Opportunity Commission ("EEOC").  *Id.*

On October 3, 2022, Mack filed a four-count complaint in the Circuit Court for Montgomery County, Maryland, seeking at least $300,000 in damages.  ECF 2.  The first three counts assert violations of the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't § 20-601 *et seq.* ("MFEPA"), for disability discrimination (Count I), retaliation (Count II), and interference with family medical leave (Count III).  *Id.* at 3–6.  The fourth count asserts a violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA").  *Id.* at 6.

DHS removed the case to federal court, ECF 1, then moved to dismiss under Rule 12(b)(1) and Rule 12(b)(6) or, in the alternative for summary judgment, ECF 11.  Mack opposed the motion, ECF 16, and sought discovery pursuant to Rule 56(d), ECF 17.  *See* Fed. R. Civ. P. 56(d).  DHS

replied to Mack's opposition, ECF 18, and filed an opposition to Mack's motion for discovery, ECF 20.

## II.     Standard of Review

"A motion to dismiss based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1) raises the question of whether the Court has the competence or authority to hear the case." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005).   "Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010) (quoting *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)).   The plaintiff, as the party asserting jurisdiction, bears the burden of establishing it. *Id.*   Where, as here, the defendants contest subject matter jurisdiction "by contending that, even assuming that the allegations are true, the complaint fails to set forth facts upon which jurisdiction is proper"—a facial challenge to jurisdiction—the plaintiff "is afforded the same procedural protections as he would receive under a Rule 12(b)(6) consideration[.]" *Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)) (internal quotation marks omitted).   Dismissal for lack of subject matter jurisdiction is proper "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799 (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)).

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)).   To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   A plausible

claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ is the Answer Ministries, Inc. v. Balt. Cnty., Md.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022). But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 212 (4th Cir. 2019)). On a Rule 12(b)(6) motion, the Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

## III.  Discussion

State sovereign immunity precludes Mack's FMLA claim. Mack fails to allege facts sufficient to make his three MFEPA claims plausible. As a result, the Court dismisses Mack's complaint without prejudice.

4

### A.  Sovereign Immunity

"A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense." *Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 35 (2012).  The assertion of sovereign immunity is a challenge to the Court's subject matter jurisdiction. *Smith v. WMATA*, 290 F.3d 201, 205 (4th Cir. 2002).

Congress may abrogate state sovereign immunity by enacting a statute pursuant to its powers to enforce the Fourteenth Amendment, so long as Congress makes its intention to abrogate sovereign immunity "unmistakably clear in the language of the statute." *Coleman*, 566 U.S. at 35. (quoting *Nev. Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 726 (2003)).  In *Coleman*, the Supreme Court held that the self-care provisions of the FMLA—the provisions Mack invokes—did not abrogate state sovereign immunity. *Id.* at 43–44.  A "private citizen may only recover monetary damages from a state under a FMLA self-care claim, therefore, if the state has voluntarily waived its sovereign immunity." *Dennard v. Towson Univ.*, 62 F. Supp. 3d 446, 450 (D. Md. 2014).

Whether a state has waived sovereign immunity "is a matter of state law, as to which the decision of the state's highest court is controlling." *Lee-Thomas v. Prince George's Cnty. Pub. Schools*, 666 F.3d 244, 249 (4th Cir. 2012) (cleaned up) (quoting *Palmer v. Ohio*, 248 U.S. 32, 34 (1918)).  The Maryland Supreme Court has ruled that the test is "(1) whether the entity asserting immunity qualifies for its protection; and, if so, (2) whether the legislature has waived immunity." *Stern v. Bd. of Regents, Univ. Sys. of Md.*, 846 A.2d 996, 1001 (Md. 2004) (quoting *ARA Health Servs., Inc. v. Dep't of Pub. Safety & Corr. Servs.*, 685 A.2d 435, 438 (Md. 1996)).  Waivers of sovereign immunity are "strictly construed . . . in favor of the sovereign." *Bd. of Educ. of Balt. Cnty. v. Zimmer-Rubert*, 973 A.2d 233, 240 (Md. 2009) (citing *Lizzi v. WMATA*, 845 A.2d 60, 65 (Md. 2003)).

As "a principal department of the State government," Md. Code Ann., Hum. Serv. § 2-201, DHS qualifies for sovereign immunity.  *Cf. Pense v. Md. Dep't of Pub. Safety & Corr. Servs.*, 926 F.3d 97, 101–02 (4th Cir. 2019) (finding Maryland Department of Public Safety and Correctional Services qualified for sovereign immunity because state law designated it "a principal department of the State government").  And Mack does not argue that the Maryland General Assembly has waived sovereign immunity from FMLA self-care claims.  The few courts that have considered this question have recognized that Maryland has not waived the sovereign immunity of its agencies from FMLA self-care claims.  *See Dennard*, 62 F. Supp. 3d at 450–52; *Reed v. Md. Dep't of Hum. Res.*, No. ELH-12-0472, 2013 WL 489985, at *6 (D. Md. Feb. 7, 2013); *Bozarth v. Md. State Dep't of Educ.*, No. DLB-19-3615, 2021 WL 1225448, at *7–9 (D. Md. Mar. 31, 2021); *Pinson v. Maryland*, No. GLR-20-1155, 2021 WL 4772919, at *3 (D. Md. Oct. 13, 2021).  Therefore, DHS is immune from Mack's FMLA self-care claim, Count IV.

Mack's sole argument that DHS does not have sovereign immunity is that the Department waived it by removing this case to federal court.  That argument, however, rests on a misunderstanding of the Supreme Court's ruling in *Lapides v. Board of Regents*, 535 U.S. 613 (2002).  In *Lapides*, the Court held that by removing a case to federal court, a state waived its sovereign immunity from *state-law* claims to which it had *already waived immunity* in state court. *Id.* at 617–18, 624.  Neither condition obtains here.  Mack's FMLA self-care claim is a federal claim.  And DHS did not waive its immunity to that claim in state court.  So DHS did not forfeit its immunity by the mere act of removing this case to federal court.

Fourth Circuit law dispels any doubt about that.  In *Stewart v. North Carolina*, the court highlighted that "*Lapides* did not resolve the effect, if any, of a state's voluntary decision to remove an action from which it would have been immune in its own courts."  393 F.3d 484, 488–89 (4th

Cir. 2005).  The *Stewart* court then resolved that issue, holding that a state "having not already consented to suit in its own courts, did not waive sovereign immunity by voluntarily removing the action to federal court for resolution of the immunity question." *Id.* at 490.  In reaching that holding, the Fourth Circuit also distinguished the other case Mack cites, *Clark v. Barnard*, 108 U.S. 436 (1883), on the same grounds.  *Stewart*, 393 F.3d at 489–90.  Removing this case to this Court did not compromise DHS's sovereign immunity to Mack's FMLA self-care claim.

By contrast, *Lapides* does mean that Mack's MFEPA claims are not barred by sovereign immunity because DHS removed the case to federal court.  True, Maryland has not waived its immunity to MFEPA suits in *federal* court.  *Pense*, 926 F.3d at 99, 102.  However, Maryland has waived its immunity to MFEPA suits in *state* court, *Davenport v. Maryland*, 38 F. Supp. 3d 679, 690–91 (D. Md. 2014), by providing that "[t]he State, its officers, and its units may not raise sovereign immunity as a defense against an award in an employment discrimination case under this title," Md. Code Ann., State Gov't § 20-903.  Because Mack's MFEPA claims are state-law claims to which the state is not immune in state court, and the state voluntarily removed the case to federal court, the state has waived sovereign immunity to these claims.  *See Lapides*, 535 U.S. at 617–18, 624.

Count IV is barred by state sovereign immunity, so it is dismissed without prejudice.[2] Counts I, II, and III are not so barred.

### B.  Administrative Requirements

Mack's three remaining claims arise under the MFEPA.  A person may bring a civil claim under the MFEPA only if

---

[2] A dismissal for lack of subject matter jurisdiction should be without prejudice. *Chamber of Com. v. Lierman*, 90 F.4th 679, 686–87 (4th Cir. 2024).

(1) the complainant initially filed a timely administrative complaint under Federal, State, or local law alleging an unlawful employment practice by the respondent; (2) at least 180 days have elapsed since the filing of the administrative action; and (3) the civil action is filed within two years after the alleged unlawful employment practice occurred.

*Muse-Ariyoh v. Bd. of Educ. of Prince George's Cnty.*, 175 A.3d 886, 894 (Md. App. Ct. 2017) (citing Md. Code Ann., State Gov't § 20-1013(a)(1)).   An administrative complaint alleging harassment must be filed with the MCCR within two years of the date of the alleged harassment. State Gov't § 20-1004(c)(3)(i); *see also Gibson v. Md. Motor Vehicle Admin.*, No. BAH-20-3220, 2024 WL 51132, at *11 (D. Md. Jan. 4, 2024).   A complaint alleging an unlawful employment practice other than harassment must be filed with the MCCR within 300 days of the date of the act alleged.   State Gov't § 20-1004(c)(2)(i); *see also Gibson*, 2024 WL 51132, at *11.

Mack alleges that he "contacted" the MCCR on December 28, 2020, concerning "discrimination and retaliation" he experienced between June 2020 and October 8, 2020, then "submitted his Formal Complaint" on September 2, 2021.   ECF 2, ¶ 4.   Otherwise, all he offers on this topic is a conclusory allegation that he "properly exhausted his administrative remedies before timely filing suit."   *Id.* ¶ 5.

Taking the facts as Mack alleges them in the complaint, the Court finds he did not timely file an administrative complaint concerning the conduct at issue in Counts I, II, and III.   By his own lights, he alleged "discrimination and retaliation," not harassment.   ECF 2, ¶ 4.   As a result, he had 300 days to file an administrative complaint from October 8, 2020.   Those 300 days elapsed on August 4, 2021.   But he did not file his administrative complaint until September 2, 2021.   That means his administrative complaint was untimely, barring the remainder of his claims.

There is one complication.   DHS attaches to its motion to dismiss two Charges of Discrimination Mack filed with the MCCR.   One is dated January 4, 2021.   ECF 11-2, at 2.   The

other is dated January 29, 2021.  ECF 11-3, at 2.  According to DHS, these are the administrative complaints Mack actually filed.  ECF 11-1, at 3 n.2.  Mack seems to agree.  In briefing, Mack replaces the dates he identified in the complaint with those on the Charges, then treats the allegations about DHS he made in those Charges as facts he alleges against DHS in this case.  ECF 16-1, at 3.  If these are the actual Charges Mack filed, then his MFEPA claims may not be time-barred.

It is not obvious that the Court can consider these documents without treating the motion as a motion for summary judgment.  Review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs.  *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c).  There is good reason for that.  The purpose of a motion to dismiss is to test whether *the complaint* states a claim for which relief can be granted.  *See Goines v. Valley Comm. Servs. Bd.*, 822 F.3d 159, 165 (4th Cir. 2016).  The Charges of Discrimination are none of the above.  The Court may consider documents attached to a motion to dismiss without converting it into a motion for summary judgment, but only if the plaintiff does not dispute their authenticity and they are also integral to and explicitly relied on in the complaint.  *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015).  Mack does not dispute the authenticity of these documents.  And it is arguable that he expressly refers to them—or at least one of them—when he alleges that he filed a "Formal Complaint" with the MCCR.  ECF 2, ¶ 4.  But it is not obvious.  After all, he alleges he filed that "Formal Complaint" nearly nine months later than he apparently filed these documents.  Even if the Court could consider these documents, they would save Mack's claim only if the Court were to credit them—specifically, their filing dates—over the allegations in Mack's complaint.  A court may credit the allegations in an exhibit over those in the complaint.  *See Goines*, 822 F.3d at 165.  But as the Fourth Circuit has

emphasized, that rule typically makes sense only when the plaintiff himself attached the documents, for "[a]nimating the exhibit-prevails rule is the presumption that the plaintiff, *by basing his claim on the attached document*, has adopted as true the contents of that document." *Id.* at 167 (emphasis added). That presumption makes less sense, if any, when the document is attached by the defendant to the motion to dismiss and contradicts the complaint. Mack's briefing suggests that he would be happy to incorporate these documents into his complaint. But the plaintiff may not amend his complaint in briefing. *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).

The Court need not decide whether it may consider these documents here, and if so, whether to credit them over the contradictory allegations in the complaint.[3] Even if Mack's MFEPA claims are timely, he has failed to state a claim for the reasons the Court sets out in the sections that follow.

---

[3] DHS also urges the Court to consider a document entitled "Settlement Agreement and Release," ECF 11-4, without treating the motion as a motion for summary judgment, ECF 20, at 2. According to that document, Mack released DHS "from any and all claims, demands, damages, actions, causes of action, or any other liability of any kind arising out of, concerning or relating to Mr. Mack's employment with the State of Maryland." ECF 11-4, ¶ 4. Strikingly, the parties to the document acknowledge making the agreement "without reliance upon any statements or representations by the parties or their representative not contained herein." *Id.* ¶ 7. However, the Court cannot consider that document without treating the motion as one for summary judgment. Mack's complaint does not mention this document, much less rely on it. *Cf. Zak*, 780 F.3d at 607. And it is not a public record subject to judicial notice. *See* Fed. R. Evid. 201(b)(2). *Cf. Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004). DHS says that the Court may consider this document because it concerns the Court's subject matter jurisdiction. ECF 20, at 2 (citing *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999)). Not so. Even if the document means precisely what DHS says it means—that Mack released DHS from all of the claims he brings now—that would imply only that Mack has failed to state a claim, not that this Court has no jurisdiction over this sort of case. The Court will not consider the "Settlement Agreement and Release" in this posture.

### C.  MFEPA Disparate Treatment and Failure to Accommodate

Mack styles Count I "Discrimination based on Disability & Interference with Medical Accommodation."  ECF 2, at 3.  He fails to plausibly allege either intentional disability discrimination or failure to accommodate.  To the extent that he means to assert a claim for interference with his family medical leave, the Court considers that claim in evaluating Count III.

"In order to establish a prima facie case of intentional disability discrimination" under the MFEPA, the plaintiff must show "(1) that he or she had a disability; (2) that notwithstanding the disability, he or she was otherwise qualified for the employment, with or without reasonable accommodation; and (3) that he or she was excluded from employment on the basis of his or her disability."  *Peninsula Reg'l Med. Ctr. v. Adkins*, 137 A.3d 211, 239 (Md. 2016).  The plaintiff "must show [the defendant's] discriminatory intent," but can make that showing circumstantially. *Id.*  "[W]hile a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, 'factual allegations must be enough to raise a right to relief above the speculative level.'"  *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15 (2002), & then quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Mack fails to plausibly allege that he is entitled to relief for intentional discrimination on the basis of disability in violation of the MFEPA.  As to the first element, Mack merely asserts that he "is a disabled person as that term is defined under the ADA."  ECF 2, ¶ 6.  He does not identify his disability or refer to any specific facts about it.  As to the second element, Mack says only that he "met and/or exceeded [DHS's] legitimate job expectations."  *Id.* ¶ 8.  Mack's allegations as to the third element are comparably conclusory.  His firing is certainly an exclusion from the workplace, but he offers little to link it to his disability.  *See id.* ¶ 13 ("Defendant has discriminated

against Plaintiff in the terms and conditions of his employment on the basis of disability."); *id.*
¶ 14 ("The above acts and practices of Defendant constitute unlawful discriminatory employment
practices within the meaning of Title 20.").  These allegations are too conclusory to state a claim.

Mack has not plausibly alleged that DHS failed to accommodate him either.  In order to
establish a prima facie case of failure to accommodate, the plaintiff must show

> (1) that he or she was an individual with a disability; (2) that the employer had
> notice of his or her disability; (3) that with reasonable accommodation, he or she
> could perform the essential functions of the position (in other words, that he or she
> was a "qualified individual with a disability"); and (4) the employer failed or
> refused to make such accommodations.

*Adkins v. Peninsula Reg'l Med. Ctr.*, 119 A.3d 146, 160 (Md. App. Ct. 2015), *aff'd*, 137 A.3d 211
(Md. 2016)).  Mack claims that he has a disability and that he notified DHS about it.  Otherwise,
all Mack alleges is that he "submitted several requests for accommodations at work due to his
disabilities, but his requests were denied."  *Id.* ¶ 6.  He does not identify what accommodations he
sought.  And he does not claim that he could have performed the essential functions of his role if
DHS had granted him the accommodations he requested.  Once again, Mack has not articulated
enough specific factual allegations to make his claim more than speculative.

Insofar as Mack means to assert a claim for interference with his family medical leave—
the only accommodation he identifies receiving—that claim is properly addressed in Count III, the
remaining count that squarely covers that claim.

Because Mack has failed to plausibly allege that DHS discriminated against him on the
basis of disability or failed to accommodate him, Count I is dismissed without prejudice.

### D.  MFEPA Retaliation

Mack styles Count II "Retaliation based on Disability & Interference with Medical
Accommodation."  ECF 2, at 4.  "To establish a *prima facie* case of discrimination based on

retaliation, a plaintiff must produce evidence that she engaged in a protected activity; her employer took an adverse action against her; and her employer's adverse action was causally connected to her protected activity." *Edgewood Mgmt. Corp. v. Jackson*, 66 A.3d 1152, 1165 (Md. App. Ct. 2013).

Like his disparate treatment claim, Mack's retaliation claim is unsupported by concrete factual allegations. All Mack says about protected activity is that "he complained about discrimination and harassment based on disability and Defendant's interference with medical accommodations." ECF 2, ¶ 18. He does not say when he complained, to whom, or in what form. Nor does he say anything more about what he complained about. Elsewhere in the complaint, Mack alleges that he filed a formal complaint with the MCCR. *Id.* ¶ 4. Filing a complaint with the MCCR is a protected activity. *Scott v. Lori*, No. ELH-19-2014, 2020 WL 3833129, at *21 (D. Md. July 8, 2020). But that does not appear to be the protected activity for which he is alleging DHS retaliated against him. He does not link that allegation to the retaliation claim, and he appears to allege that he described the retaliation at issue here in that administrative complaint—which compels the conclusion that the retaliation took place *before* he complained to the MCCR, not *because* he complained to the MCCR. *Id.* And he does not even allege that DHS knew he filed a complaint with the MCCR.

Mack's allegation that DHS took adverse action against him is similarly sparse. He says only that DHS "failed to address [his] continued requests that [DHS] cease, address and correct these discriminatory acts and practices and [DHS] has continued to engage with such acts and practices."[4] *Id.* ¶ 19. As for a causal connection, Mack offers only two conclusory statements:

---

[4] Mack does not appear to allege that his termination was an adverse action for purposes of his retaliation claim. Even if he had, his claim would fall short for the other reasons identified in this section.

that DHS acted "in retaliation for [his] complaints" and that "[t]here is a causal connection between [his] complaints and the materially adverse actions and disparate treatment taken against [him] by [DHS]." These "threadbare" references to the elements of the cause of action, "supported by mere conclusory statements," are not enough to state a claim for relief. *See Coleman*, 626 F.3d at 191 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Because Mack has failed to plausibly allege that DHS retaliated against him in violation of the MFEPA, Count II is dismissed without prejudice.

### E. MFEPA Interference with Medical Leave

Mack's third count is styled as "Interference with Family Medical Leave" in violation of the MFEPA. ECF 2, at 5. In his complaint, Mack does not identify what provision of the MFEPA he believes the alleged conduct violates. This is no surprise because interference with medical leave does not appear to be a claim under the MFEPA. The statute's text does not provide for a claim of interference with medical claim. Mack cites no authority for the notion that the statute covers this claim. And the Court has not found any. The Maryland Supreme Court's most recent survey of the protections the MFEPA provides people with disabilities does not mention it. *See Peninsula Reg'l Med. Ctr.*, 137 A.3d at 217–20. Of course, interference with family medical leave is a claim under the FMLA. *See, e.g.*, *Sherif v. Univ. of Md. Med. Ctr.*, 127 F. Supp. 3d 470, 477 (D. Md. 2015). But Mack provides no reason to think that it is a claim under the MFEPA.

Compounding the difficulty of construing Count III, the allegations distinct to this count are as focused on retaliation as they are on interference. Mack refers to the conduct he challenges as "retaliation" and asserts that he was penalized for "protected activity." ECF 2, ¶¶ 25, 27. Retaliation for taking medical leave is a claim under the FMLA. *See Fry v. Rand Constr. Corp.*,

964 F.3d 239, 244–45 (4th Cir. 2020).  Again, however, Mack has provided no reason to think that it is a claim under the MFEPA.

Assuming without deciding that interference with FMLA leave or retaliation for taking it could constitute a violation of the MFEPA on terms analogous to those under which it would constitute a violation of the FMLA, Mack has not alleged facts sufficient to state a claim for relief. "To make out an 'interference' claim under the FMLA, an employee must . . . demonstrate that (1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm."  *Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 427 (4th Cir. 2015).  An FMLA retaliation claim has the same elements as an MFEPA retaliation claim: a protected activity, an adverse action, and a causal link between the two.  *See id.* at 244–45.

DHS granted Mack the medical leave he requested.  Calling him into the office for a single meeting about a personnel matter does not constitute a violation of the FMLA in the absence of any allegation that he was made to work at the meeting.  *See Adams*, 789 F.3d at 427–29; *Ensor v. Jenkins*, No. ELH-20-1266, 2021 WL 1139760, at *37 (D. Md. Mar. 25, 2021).  Yet that is the interference he apparently alleges.  ECF 16-1, at 10 ("In the matter *sub judice* Defendant interfered with Plaintiff's right to take FMLA leave by forcing him to return to the office for a meeting while he was on approved medical leave.").  Nor is it enough for Mack to allege that he was fired while on medical leave; he must also allege that he was fired *because* he took medical leave.  *See Coleman v. Anne Arundel Cnty.*, 766 A.2d 169, 177 (Md. 2001); *Fry*, 964 F.3d at 245–47.  Yet Mack never squarely makes that allegation.  And even if the Court were to construe the complaint to make that allegation, it would be unsupported by any specific allegations about his employer's intent that would make it plausible.  Mack cannot ask the Court to connect the dots for him.

Count III, "Interference with Family Medical Leave," is dismissed without prejudice.

## IV. Request for Leave to Amend

Mack requested leave to amend if the Court were to grant the motion to dismiss his claims. ECF 16-1, at 16. However, Mack has not identified what he would amend the complaint to say if he were granted leave to do so. In consequence, the Court denies this request for leave to amend without prejudice. If Mack would like to amend the complaint, he should file an independent motion for leave to amend, provide a proposed amended complaint, and comply with this Court's Local Rules.[5]

## V. Conclusion

DHS's motion, treated as a motion to dismiss, ECF 11, is granted. Mack's claims are dismissed without prejudice. Mack's motion for discovery, ECF 17, is denied as moot. A separate order follows.

Date: February 13, 2024

Deborah L. Boardman
United States District Judge

---

[5] Mack also moved for discovery under Fed. R. Civ. P. 56(d), which provides that when a party moves for summary judgment, the non-moving party may file a motion for discovery to obtain information necessary to contest summary judgment. *See Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Because the Court treats the defendant's motion as a motion to dismiss, Mack's Rule 56(d) motion is moot.