**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| GABRIEL MACK, | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. DLB-23-1577 |
| MARYLAND DEPARTMENT OF HUMAN SERVICES, | * | |
| | * | |
| Defendant. | | |

**MEMORANDUM OPINION**

Gabriel Mack accuses his former employer, the Maryland Department of Human Services ("DHS"), of discrimination and retaliation in violation of the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't § 20-601 *et seq.* Over a year before he filed this suit, however, Mack signed a settlement agreement in which he agreed to "unconditionally" release DHS "from any and all claims, demands, damages, actions, causes of action, or any other liability of any kind" arising out of his employment or termination. DHS filed a motion for summary judgment, arguing that the settlement agreement barred Mack's claims. ECF 32. In response, Mack claimed that he had been fraudulently induced to sign the agreement and sought discovery to prove it. ECF 37 & 38. The Court denied DHS's motion without prejudice and allowed limited discovery on Mack's claim of fraudulent inducement. ECF 49.

Now, DHS has again moved for summary judgment on Mack's claims, arguing that even after discovery, there is no evidence that Mack was fraudulently induced into executing the settlement agreement and that the agreement bars his claims. ECF 51. For the following reasons, DHS's motion for summary judgment is granted.

## I.    Background

The following facts are derived from the evidence submitted by the parties in connection with DHS's motions for summary judgment.

Mack worked for DHS as a Human Services Specialist in the Montgomery County Office of Child Support from August 2019 until October 8, 2020. ECF 32-2, ¶ 6. He holds a college degree. ECF 51-3, at 3. He suffers from attention deficit disorder ("ADD") and anxiety. ECF 37-2, ¶ 3.

On April 10, 2020, Mack was suspended for ten days without pay. ECF 32-3, at 2; ECF 51-2, at 4.

On August 7, 2020, Mack was disciplined for allegedly improperly recording a conference and failing to obey an order given by a superior and was suspended for 15 days without pay. ECF 32-2, ¶ 7. He filed an administrative appeal, which was assigned DHS # 20-91 and Office of Administrative Hearings ("OAH") Case # SPMS-DHS-40-21-088868. *Id.* ¶ 8.

On October 8, 2020, Mack was fired. *Id.* ¶ 9. He was terminated for allegedly "bullying a female colleague, for a demonstrated history of engaging in inappropriate behavior toward female co-workers[,] and [for] his disciplinary history." *Id.* He also filed an administrative appeal of his termination, which was assigned DHS Case # 21-37 and OAH Case File # SPMS-DHS-10-21-04347. *Id.* ¶ 10.

On January 29, 2021, Mack initiated proceedings before the Maryland Commission on Civil Rights ("MCCR"). ECF 37-4. Mack claimed that while working for DHS he had been bullied and harassed on the basis of his race, national origin, disability, and sex and in retaliation for requesting a reasonable accommodation. *Id.* at 3. He also claimed that he had been terminated in retaliation for taking Family and Medical Leave Act ("FMLA") leave. *Id.*

On June 8, 2021, Mack participated in a virtual settlement conference to discuss a resolution of his pending administrative appeals. ECF 51-3, at 4. Also present at the conference were Sheila Hill, Mack's union representative; Tymeana Venson, who was then an employee relations officer for DHS's Human Resources unit; Cyreka Jacobs, another DHS employee relations officer; and an administrative law judge ("ALJ").[1] *Id.*; ECF 51-2, at 3; ECF 32-2, ¶ 12. On that date, Mack signed a settlement agreement.[2] ECF 32-3.

The settlement agreement is two pages long and contains seven numbered paragraphs.[3] In the agreement, DHS agreed to rescind Mack's termination, remove documentation concerning the termination from Mack's personnel file, accept Mack's resignation effective October 8, 2020, and provide a neutral reference for Mack in the future. *Id.* at 2. DHS also agreed to rescind Mack's 15-day forfeiture of leave, pay out 15 days of leave "effective immediately," and reduce the ten-day suspension to a letter of counseling and immediately pay out ten additional days of leave. *Id.* In exchange, Mack agreed to withdraw the appeals of his August 2020 discipline and his termination. *Id.* He also agreed to a prohibition on seeking employment with DHS, the Montgomery County Office of Child Support, or "any of its other local departments of social services, agencies, affiliates or subcontractors." *Id.*

The settlement agreement contained the following release:

---

[1] Venson has since changed her name to Tymeana Bullock and is now the deputy director of DHS's Office of Employment and Program Equity. ECF 51-2, at 3. Because she was known as Tymeana Venson at the time the settlement agreement was executed, the Court refers to her as such.

[2] In a declaration submitted in connection with DHS's first motion for summary judgment, Mack stated that he executed the settlement agreement on October 8, 2021. ECF 37-6, ¶ 9. In his deposition, however, Mack stated that he signed the agreement on June 8, 2021, the day it is dated. ECF 51-3, at 4.

[3] The settlement agreement also contains an attachment: a one-page typed resignation notice with space for a date and Mack's signature.

> Mr. Mack agrees for himself, and on behalf of his past and present agents, servants, attorneys, heirs, successors, executors, administrators, assigns and representatives, *absolutely and unconditionally*, to remise, release, acquit and forever discharge the State of Maryland, DHS, Montgomery County Office of Child Support, their agencies, units, divisions, affiliates, directors, agents, servants, employees, attorneys, successors and assigns, of and from *any and all* claims, demands, damages, actions, causes of action, *or any other liability of any kind* arising out of, concerning or relating to Mr. Mack's employment with the State of Maryland from the date that he began working for the State of Maryland to [June 8, 2021], including but not limited to *any and all claims that were or could have been brought concerning his termination* in DHS Case File #21-37, **_OAH Case File #SPMS-DHS-10-21-04347_**, *any other federal state, or local laws, and any and all causes of tort and contract claims*.

*Id.* (all emphases added except emphasis of OAH Case File #).

The final paragraph of the settlement agreement provided in relevant part that the agreement was "made without reliance upon any statements or representations by the parties or their representative [*sic*] not contained herein." *Id.* at 3. It further stated that the agreement "represents the product of negotiations and shall not be deemed to have been drafted exclusively by any one party." *Id.* The agreement bears the signatures of Mack, Hill, and Venson by and through Jacobs. *Id.*

The same day that he signed the settlement agreement, Mack tendered his resignation from the Montgomery County Office of Child Support effective October 8, 2020, the date of his termination. *Id.* at 4.

Two days later, on June 10, 2021, Mack sent an email to Paul Bennett (his attorney in this matter), two members of Bennett's firm, and Hill with the subject line "Re: FYI: Withdraw – Gabriel Mack SPMS-DHS-10-21-04347 Termination (Settlement Agreement)." ECF 37-5, at 2. The contents of Mack's email and any email(s) that preceded it are not in the record because the exhibit containing Mack's email cuts off at the bottom of the page. *Id.* Hill appears to have then

forwarded Mack's email to Venson, stating: "Please see the email threads below. I am available to talk to resolve this dilemma."[4] *Id.*

The next day, June 11, 2021, Venson sent Hill the following email, copying Jacobs:

Good morning Sheila,

As discussed, since Mr. Mack pursued the MCCR and alleged FMLA violations prior to signing the settlement agreement, he can continue to pursue the allegations. Since we allowed him to "Resign" instead of termination, he can disclose or discuss the matters that caused him to pursue his allegations. The settlement agreement is saying he cannot pursue anything regarding the termination with the DHS only. It would be Mr. Mack's right to pursue any other legal action that he wishes to take.

I hope this helps.

*Id.* Hill then forwarded Venson's email to Mack, copying Bennett. *Id.* at 3. Bennett replied: "That answers my concerns. Thank you." *Id.*

On October 3, 2022, Mack filed this lawsuit against DHS in the Circuit Court for Montgomery County, Maryland, bringing claims for discrimination, retaliation, and interference with family medical leave in violation of the MFEPA and the FMLA. ECF 1-1. The Attorney General of Maryland was served on May 11, 2023, and DHS removed the case to this Court on June 12, 2023. ECF 1, at 1. On February 13, 2024, the Court dismissed Mack's claims without prejudice, concluding either that they were barred by sovereign immunity or that Mack had failed to allege sufficient facts to make his claims plausible. ECF 21 & 22. Mack then filed an amended complaint on October 21, 2024, omitting his FMLA claim and asserting only two MFEPA claims.[5] ECF 30. Mack seeks reinstatement, benefits, front and back pay, and monetary relief in excess of

---

[4] Though the emails in evidence suggest that Hill forwarded Mack's email to Venson, in her deposition Venson denied ever having previously seen Mack's email. ECF 51-2, at 5.

[5] Although Mack's omission of his sole federal claim deprived this Court of federal-question jurisdiction, *see Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 44 (2025), the Court still has diversity jurisdiction because Mack resides in the District of Columbia, *see, e.g.*, ECF 51-3, at 3, and has sued a Maryland state agency for damages exceeding $75,000.

$300,000. *Id.* at 7. Mack's allegations in this suit largely mirror his allegations in the MCCR proceedings.

DHS answered the amended complaint on December 12, 2024. ECF 29. DHS asserted seven affirmative defenses, including that Mack had released all his claims against DHS. *Id.* at 5.

On December 18, 2024, DHS moved for summary judgment, arguing that Mack's claims were barred by the settlement agreement. ECF 32. Mack opposed the motion and sought discovery. ECF 37 & 38. Mack claimed that he had only signed the settlement agreement because he had been "assured by [DHS's] representatives, including . . . Venson . . . that [he] [could] still pursue [his] discrimination and FMLA claims." ECF 37-2, ¶ 14. In support of this claim, he pointed to Venson's June 11, 2021 email. *Id.* ¶ 15. He argued that DHS had fraudulently induced him to sign the settlement agreement and thus the release was invalid. ECF 37-1, at 7–8.

On July 28, 2025, the Court held a hearing on the motion for summary judgment, denied the motion without prejudice, and authorized limited discovery on Mack's claim of fraudulent inducement. ECF 49. Specifically, the Court authorized Mack to depose Venson for one hour regarding the parties' June 2021 settlement negotiations "and her representations to Mr. Mack concerning the scope of the release" and directed DHS to "produce any contemporaneous emails" between Venson and Hill and Venson and other DHS employees "regarding the scope of the release in the settlement agreement." *Id.* at 1. The Court also authorized DHS to depose Mack for one hour regarding the June 2021 negotiations and Venson's representations regarding the scope of the release. *Id.* Mack and Venson were deposed on September 11, 2025. ECF 51-2, at 2; ECF 51-3, at 2.

In her deposition, Venson provided more context for the events leading up to her June 11, 2021 email to Hill. Venson stated that on June 10, 2021, after Mack signed the settlement

agreement, Hill contacted her to ask if the settlement agreement could be modified to allow Mack

to pursue the claims he was then pursuing with the MCCR. ECF 51-2, at 4. Venson claimed that

this was the first she had heard of Mack's MCCR proceedings and that Mack had not told her about

these proceedings before he signed the agreement. *Id.* at 5. Following guidance from her

supervisor, Venson told Hill that DHS was "not amenable to changing" the release provision. *Id.*

at 6. The next day, however, Venson sent Hill the email in which she stated that Mack could

continue to pursue the claims he had brought before the MCCR. *Id.* at 4. Venson stated that she

did not consult with anyone at DHS before sending this email and that she "thought [she] was

doing the right thing by assisting [Mack] with trying to recoup some compensation" related to his

"FMLA concerns." *Id.* at 5. Though Venson's role in DHS required her to facilitate appeal

conferences, serve as a mediator, issue written decisions, and represent DHS in OAH proceedings,

Venson does not have a college or law degree. *Id.* at 3.

Mack also was deposed. His answers were often vague and confusing.[6] He stated that Hill

had represented him throughout the appeals process prior to the settlement conference and that to

---

[6] The following exchange is illustrative:

> Q: And when the ALJ was going over those terms and conditions of the release with you, did you ever mention to the ALJ that you had a pending MCCR claim?
> A: It was mentioned more than once, but, again, I can't recall whether or not it was exclusively told to which party, but I've mentioned it more than once, yeah, on multiple occasions.
> Q: I need you, because that's really the crux of this deposition here that we're ordered by the judge to talk about. So could you please tell me each of those occasions that you are stating that your MCCR claims were brought up. So, why don't you start with the first time that you recall bringing up your MCCR claim.
> A: I mean, if you want specific dates, I wouldn't be able to tell you specific dates, because it was an extremely long time since I initially filed them. What I do know is that any of the complaints that I filed or any of the—pursuant to this particular instance, I've had an opportunity to ask what are my options and explain what I was pursuing and no one gave any objections to that pursuit, what they, you know, here we are.

the best of his knowledge, whenever he had a discussion with Venson prior to executing the settlement agreement, Hill or a representative of the union was present. ECF 51-3, at 6, 8. He claimed that on the day of the settlement conference, June 8, 2021, he had a conversation with Venson and Hill in which Venson told him that the settlement agreement "would not impact anything that already existed or was in place" or "any type of filings outside to [*sic*] MCCR[.]" *Id.* at 6. He claimed that this representation was memorialized in an email exchange between himself, Venson, and Hill that same day, June 8, 2021. *Id.* ("I do know that on that same day, there was an email that was sent to clarify what was spoken about prior."); *see also id.* at 7 ("It was an email that was sent from or to—well, I can't tell exactly which, which direction it came from, but

---

Q: So, I need more details from you. Were these conversations, conversations that you had solely with Sheila Hill, your union representative?

A: No. There, again, they're only the union representative and Ms. Tymeana— there's only the union representative and then [Ms.] Tymeana. Those are primarily— primarily the persons I spoke to, and—to try to get some type of clarification, and anything that I needed as far as clarification were those persons, mediator and then getting that information to me.

THE COURT REPORTER: I'm sorry, sir, you're not speaking very clearly. Your words are a little bit fuzzy.

THE WITNESS: I'll repeat it.

A: So, leading up to this instance, I, primarily, conferenced with Ms. Venson and my union representative, but, primarily, the union representative and Ms. Venson were supposed to already have been conferencing, because my union representative was, in fact, representing me throughout the appeals process or internal appeals process before this. So, they would have already had the primary communications and then giving back information to me leading up to this final outcome. So, again, those details that you're speaking of, because it's been so long, I wouldn't be able to give you exact dates of when exactly those instances were, but we had more than one conversations [*sic*] about options.

Q: And that was options in regards to settling your appeals, is that correct?

A: Options with regards to protecting what was already in place or protecting my rights, how it was presented to me.

Q: And that's what I need to know about. That's why we're here today. So, maybe I can backtrack for you.

ECF 51-3, at 5–6.

between myself, Ms. Venson and the representative from the union, those, those clarifications were established immediately during the same day."). He promised to provide that email to DHS's counsel. *Id.* at 10–11. No such email is in the record submitted to the Court.[7]

DHS now moves again for summary judgment. ECF 51. Mack opposes the motion. ECF 54. DHS has not filed a reply. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025).

## II.    Standard of Review

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment. *Id.* at 252. The court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (citing *Anderson*, 477 U.S. at 249). However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is

---

[7] In his opposition to DHS's motion, Mack claims that the email he was referring to in his deposition was Venson's June 11, 2021 email and that he did in fact produce that email to DHS and submit it to the Court. ECF 54-1, at 10. But Mack was clearly referring in his deposition to an email sent on *June 8*—the "same day" he signed the settlement agreement, ECF 51-3, at 6—not Venson's email sent three days later. No June 8, 2021 email is in the record.

proper. *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In ruling on a motion for summary judgment, the court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

### III.   Discussion

DHS seeks summary judgment because the release in the settlement agreement includes Mack's MFEPA claims. Mack does not dispute that the broad scope of the agreement's release includes these claims. Mack argues, instead, that he was fraudulently induced into executing the settlement agreement with such a broad release because Venson told him before he signed the agreement that his then-pending MCCR claims (which are the basis of his MFEPA claims) were excluded from the scope of the release. Mack insists there is a genuine dispute of material fact about whether he was fraudulently induced into signing the settlement agreement.

Release is an affirmative defense. *See* Fed. R. Civ. P. 8(c)(1). To prevail on this defense, DHS must "establish that [Mack] 'signed a release that addresses the claims at issue, received adequate consideration, and breached the release.'" *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (quoting *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 935 (5th Cir. 1994)). DHS first must "prove that no disputed material fact exists regarding the defense." *Auslander v. Helfand*, 988 F. Supp. 576, 580 (D. Md. 1997). If DHS meets its initial burden, then "the burden shifts to [Mack] to demonstrate specific disputed material facts precluding application of the affirmative defense[.]" *Id.*

There is no dispute that Mack signed the settlement agreement. In exchange, Mack received valuable consideration. Among other things, he was allowed to resign instead of being fired, and

10

he received a payout for the days he had been suspended. Mack does not claim that this consideration was inadequate. Nor do the parties dispute that the release covers Mack's MFEPA claims. When the terms of a release are "clear and unambiguous," they are to be "afforded their plain and ordinary meaning[.]" *Id.* (citing *Bernstein v. Kapneck*, 430 A.2d 602, 606 (Md. 1981)). By its clear and unambiguous language, the release applies to "any and all claims, demands, damages, actions, causes of action, or any other liability of any kind arising out of, concerning or relating to Mr. Mack's employment," including claims under state law. ECF 32-3, at 2. Because Mack's MFEPA claims "arise out of, concern, or relate to" his employment with DHS, his claims are barred by the release. And by filing this lawsuit, Mack breached the release. DHS has met its initial burden.

It is thus incumbent upon Mack to demonstrate specific facts defeating DHS's release defense. Mack contends he was fraudulently induced into signing the settlement agreement and that he has identified evidence raising a genuine dispute of material fact as to whether he was fraudulently induced. Under Maryland law, "fraud can and will invalidate an otherwise-complete release of liability." *Allen v. Ritter*, 35 A.3d 443, 450 (Md. 2011); *see also, e.g.*, *Julian v. Buonassissi*, 997 A.2d 104, 119 (Md. 2010) (contract obtained by fraud, while not void ab initio, is "voidable at the election of the parties affected by the fraud") (quoting *Urner v. Sollenberger*, 43 A. 810, 811 (Md. 1899)). The elements of fraud or fraudulent inducement are:

> (1) that the defendant made a false representation to the plaintiff; (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth; (3) that the misrepresentation was made for the purpose of defrauding the plaintiff; (4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Bennett v. Ashcraft & Gerel, LLP*, 303 A.3d 1237, 1266 (Md. App. Ct. 2023) (citing *Sass v. Andrew*, 832 A.2d 247, 260 (Md. Ct. Spec. App. 2003)).

"For a plaintiff to have a right to rely on an alleged misrepresentation, the plaintiff must reasonably believe in the 'full truth' of the misrepresentation." *Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*, 822 F. Supp. 2d 505, 536 (D. Md. 2011) (citing *James v. Goldberg*, 261 A.2d 753, 758 (Md. 1970)). In general, a party to a contract may not reasonably rely on "allegedly fraudulent statements made in the face of plainly contradictory contractual language." *Call Carl, Inc. v. BP Oil Corp.*, 554 F.2d 623, 631 (4th Cir. 1977). Maryland courts may relax this rule, however, when the particular facts of the transaction reveal that the allegedly defrauded party was vulnerable to manipulation or misrepresentation. For example, the rule may be relaxed if the party was unsophisticated, lacked experience with the type of transaction at issue, relied on their counterparty for advice, was pressured to sign quickly, or was prevented from reading the contract. *See, e.g.*, *Parker v. Columbia Bank*, 604 A.2d 521, 529 (Md. Ct. Spec. App. 1992); *Price v. Berman's Automotive, Inc.*, No. JMC-14-763, 2015 WL 5720429, at *5 (D. Md. Sept. 28, 2015).

Mack has not demonstrated a genuine dispute of material fact as to whether he was fraudulently induced to sign the settlement agreement. Even if, as Mack claims, Venson told him before he signed the settlement agreement that the release would not apply to the claims he now brings in this lawsuit, he could not reasonably have relied on that representation because the plain language of the agreement contradicted it. The settlement agreement's release could hardly be clearer. Mack agreed to "absolutely and unconditionally" release DHS from "any and all claims, demands, damages, actions, causes of action, or any other liability of any kind," including "any and all claims that were or could have been brought concerning his termination . . . any other federal, state or local laws, and any and all causes of tort and contract claims." ECF 32-3, at 2. What's more, the parties explicitly agreed that in executing the agreement they were *not* relying on "any statements or representations by the parties or their representative not contained herein."

*Id.* at 3. In the face of such clear, sweeping language, it was unreasonable as a matter of law for Mack to rely on Venson's representations (if they were made) that the release would not apply to the claims he now brings.

Mack has not produced any evidence suggesting he was so vulnerable to manipulation or misrepresentation that the Court should relax the rule that a party to a contract may not reasonably rely on fraudulent statements made in the face of contradictory contractual language. Mack is college-educated. He read the agreement before signing it. The agreement itself was short—a mere two pages—and written in plain language. And throughout the negotiation of the agreement and during the settlement conference, Mack was represented by Hill, a union representative.[8] Mack has submitted no evidence that he was unable to appreciate what he was signing. He has not suggested that DHS pressured him. Though there is evidence that Mack suffers from ADD and anxiety, he has not claimed that those conditions made it more difficult for him to understand the settlement agreement. In short, Mack has offered no evidence to suggest he was vulnerable to manipulation or misrepresentation.

Mack has not met his burden to demonstrate specific material facts that preclude application of DHS's affirmative defense. DHS is entitled to summary judgment on its defense of release.

---

[8] It appears that Mack also may have been represented by counsel when he executed the agreement, since he emailed Bennett two days after the settlement conference and Bennett expressed "concerns" about the agreement in an email the next day. If Mack was represented by counsel, it is not clear from the record why Bennett did not participate in the settlement conference.

**IV.    Conclusion**

DHS's motion for summary judgment is granted. A separate Order follows.

Date:  June 1, 2026                          _____
                                             Deborah L. Boardman
                                             United States District Judge